FRANK GOLDSTEIN, Respondent, v. BERNARD WINKELMAN, Appellant.

St. Louis Court of Appeals, January 3, 1888.

1. PROMISSORY NOTE—INADMISSIBLE DEFENCES. — The maker of a promissory note cannot defend in a suit by a transferee, on the ground that the transfer was without consideration, or was in fraud of the payee's creditors.

2. ——— PAYMENT TO PAYEE AFTER TRANSFER.—The maker of a note will not be protected in any payment to the payee or his representative, after notice of the transfer.

3. ——— PAYEE'S ADMINISTRATOR CANNOT QUESTION TRANSFER.—The administrator of a deceased payee, although also a judgment creditor of the estate, cannot disaffirm his intestate's transfer, or recall to himself the title of the note.

4. PRACTICE—OBJECTIONS NOT AVAILABLE IN APPELLATE COURT.—A cause having been tried below on the theory of a loss of the note sued on, the objection that there was no proof of such loss cannot be raised for the first time in the appellate court. Nor can the objection be so raised that no indemnity bond was tendered, as required by the statute.

APPEAL from the St. Louis Circuit Court, HON. SHEPARD BARCLAY, Judge.

*Affirmed.*

MUENCH & CLINE, for the appellant: There was no proof whatever that the note, which defendant had given Luis, was actually lost. This lack of proof was not supplied by the introduction of the memorandum in evidence. The endorsement of Luis' name thereon was of no effect whatever. It was not coupled with any words of assignment, and, hence, this endorsement also possessed no probative force, and should have been excluded. In ignoring every other question in the case, except that of the maker's right to assail the good faith of the transfer to the holder, the court clearly erred. Where there exists, upon the one hand, a person owing a debt fraudulently transferred, and upon the other, a judgment creditor of the fraudulent donor, equity will not drive such judgment creditor to a useless circuit of actions, but will permit the creditor to collect and apply the asset directly, so the person owing the debt be willing and will accord to the latter the same weapons in defence which, in a proceeding in equity against him by the judgment creditor, would be used in offence. Edwards, Bills & Notes, 251; *Boecka v. Nuella,* 28 Mo. 180; *Patterson v. Cave,* 61 Mo. 439; *Bennet v. Pound,* 28 Mo. 599. Not merely was it a voluntary transfer, but it was received by plaintiff with the fullest notice of the existing judgment. Such judgment creditor, being the first to avail himself of the asset in question, is entitled to apply the same in satisfaction of his demand, to the exclusion of all other claimants. *Hall v. Callahan,* 66 Mo. 323; *Zoll v. Soper,* 75 Mo. 462; *Lionberger v.*

*Baker,* 88 Mo. 447; *Dannan v. Coleman,* 8 Mo. App. 594; *Bohannon v. Combs,* 79 Mo. 305. The requirements of section 3652, of Revised Statutes, were in no wise complied with. If, as is asserted, the note which was claimed (but not proven) to have been lost, was a negotiable promissory note, then no judgment could, in any event, be rendered against defendant without an indemnity bond.

THOS. J. ROWE and T. B. HARVEY, for the respondent: There was proof that the note, which appellant had given Luis, was actually lost. Furthermore, the answer herein admits the loss of the note. Replying to appellant's second point, we simply say that the court, necessarily, in giving a verdict for respondent, found the fact to be that Luis had transferred the note to respondent, and; there being evidence on which to base such finding, the appellate court will not further inquire into it. An administrator cannot impeach the alleged fraudulent conveyance of his intestate; nor can the maker of a valid and undisputed note question the *bona fides* of a transfer thereof for the reason that said transfer was in fraud of creditors, or was made upon an entirely inadequate consideration. *Brown's Adm'r v. Finley,* 18 Mo. 375; *George v. Williamson,* 26 Mo. 190; *Merry and Glenny v. Fremon,* 44 Mo. 518; *Jackman v. Robinson,* 64 Mo. 292; *Miller v. Ohnsorg,* 10 Mo. App. 432. It does not appear from the record whether an indemnifying bond, under section 3652, was given or not. The giving of such bond is a matter for the exclusive benefit of the maker of the lost instrument, and may be waived by him. And, further, it does not appear that the attention of the trial court was called to this matter, and the appellate court will not notice alleged errors not incorporated in motion for new trial.

THOMPSON, J., delivered the opinion of the court.

The plaintiff states in his petition, that the defendant, by his promissory note, dated January 21, 1884,

promised, for value received, to pay to Theodore Luis the sum of $730, on demand, with interest thereon from date at the rate of five per cent. per annum ; that, on or about January 1, 1886, said promissory note was lost or destroyed; that, on March 22, 1886, said Theodore Luis, for value received, sold, transferred, set over, and assigned said promissory note, and all rights and claims which he had thereunder, to the plaintiff, who is now the legal owner of the same ; that the plaintiff has demanded payment of the same, which demand has been refused.

The answer admits the making of the note, and contains a general denial of the other allegations of the petition. It then alleges that the note has been paid in full to Anthony Nacke, the administrator of Luis, who was the payee and legal owner and holder of it. It further charges that Luis did not transfer to the plaintiff the note, or any right, title, or interest therein. It then sets up that, in the year 1886, Luis, having obtained from the defendant a statement in writing of the indebtedness evidenced by the note (the same having then been lost or mislaid) wrote his name across said statement in writing, as the defendant is informed and believes, and requested the plaintiff to collect the money therein stated to be due, for the account of Luis ; that the plaintiff did not pay any consideration for the transfer of the written statement to him, and that the same, if intended to be to the use of Luis, or to the use of plaintiff, was in fraud of the creditors of Luis then existing ; that, at the date of said transfer, there were debts due by said Luis, both judgment debts and other indebtedness ; that Nacke, as the administrator of Luis, was the legal representative, both of Luis and of his creditors, and was, both at law and in equity, entitled to receive the payment of the note, and to receipt for the payment, and to discharge this defendant from all further liability thereon, which was done.

At the trial the plaintiff gave evidence tending to show that the death of Luis took place on the twenty-

sixth day of March, 1886, at the house of the plaintiff's father, where Luis had previously boarded for about three years; that, for about three months prior to the death of Luis, he had been sick for a considerable part of the time, with a disagreeable disease; that the plaintiff had acted as his nurse during such sickness; that Luis, having lost the note, which is the subject of this action, procured from the defendant, who was the maker of it, the following memorandum of it: "Note made by H. Winkelman, payable to the order of Theo. Luis, for $730, dated July 21, 1884, payable on demand, with five per cent. int. from date;" that, four days prior to his death, namely, on the twenty-second of March, 1886, Luis had come down from his chamber in the house of the plaintiff's father, and requested the plaintiff to help him back, and stated to the plaintiff that the plaintiff had always been good to him, and that he would give the plaintiff this note for what the plaintiff had done for him; that, at the same time, he pulled this memorandum out of his pocket and endorsed it, and handed it to the plaintiff; that a man named Puckhaber, who was a tinner, casually at the house making some repairs, was requested to witness the endorsement; that Puckhaber stated that he would rather not do so alone; that, thereupon, William F. Goldstein, a brother of the plaintiff, was called upon and witnessed the act of Luis, in writing his name on the back of the memorandum and delivered it to the plaintiff. Both of these witnesses testified in substance that Luis said that he gave the note to the plaintiff in consideration of what the plaintiff had done for him during his sickness. The testimony of these witnesses also tends to show that, at the time when Luis did this, he was not in anticipation of death.

For the defendant it was shown that, after the death of Luis, Anthony Nacke had taken out letters of administration upon his estate, and had demanded the memorandum of the plaintiff, which demand had been refused; that, at the time when this demand was made,

the plaintiff made inconsistent statements to Nacke of the reason for which Luis had given him the memorandum; claiming that it was in consideration of his services to Luis during his sickness, and also admitting that if he had collected the money during the lifetime of Luis he would have turned it over to Luis. The defendant's evidence also showed that Nacke was the owner, partly in his own right and partly as trustee for Mrs. Kreiter, of a judgment against Luis, originally for $732.17, which had come to him, Nacke, by certain mesne assignments; that Nacke had presented this judgment in the probate court, and that it had been allowed as a claim against the estate of Luis; that Nacke, in his character of administrator of Luis, had demanded payment of the note of the defendant, and that the defendant had paid the same to Nacke, upon Nacke giving him a bond of indemnity.

When the memorandum of the lost note was offered in evidence by the plaintiff, the defendant objected to the same, and, his objection being overruled, he excepted. This was the only exception reserved during the trial.

The case was tried by the court sitting as a jury. No declarations of law were requested by either party; but, before rendering his finding and judgment, the learned judge filed a brief memorandum, expressing his conclusions of law on the facts. The substance of these conclusions was: (1) That an administrator cannot question a transfer of property by his intestate, as voluntary and hence fraudulent as to creditors. This is a well-settled principle in our jurisprudence; and it may be added that what he cannot thus do directly he cannot do indirectly. (2) A debtor on a note cannot question the *bona fides* of a transfer made by the holder of the note to another, on the ground that the transfer was in fraud of the creditors of the holder, or was without consideration. This principle is equally well settled in our jurisprudence, and no authorities need be cited in support of it. (3) After notice of transfer of the note

to the plaintiff, the defendant was not protected in any payment which he may have made to the administrator. This conclusion is equally clear.

The unavoidable conclusion, therefore, seems to be, that if Luis, in his lifetime, transferred this note, by the endorsement and delivery of the memorandum in question, and by the verbal statements made at the time, as shown by the testimony of the plaintiff's witnesses, to the plaintiff, for the consideration of the services which the plaintiff had rendered him during his illness, the note, and with it the right of action thereon, passed to the plaintiff; and Luis' administrator could not question the validity of the transfer, nor could the defendant take it upon himself to determine its validity. There is no escape from the further conclusion that, although Luis may have transferred the note to the plaintiff, by the acts above stated, for the purpose of hindering, delaying, or defrauding his creditors, among them Nacke, as the holder of the judgment above described, it would be equally beyond the power of Nacke, as his administrator, to disaffirm this transfer and recall to himself the title of the note, so as to have the right to collect the same from the defendant; nor could the defendant take it upon himself to decide whether the transfer was made in fraud of creditors of Luis or not. That was something with which he had no concern. It was a demand note, and there was nothing for him to do except to pay it, when payment was demanded, to the legal holder. A transfer of property by a debtor in fraud of his creditors is good as between the transferor and the transferee. The transferor cannot at pleasure set aside the transfer and reclaim the property, nor will the law aid him in recovering it; and what he cannot do, his personal representative cannot do. But if the note was, by the acts done, transferred by Luis to the plaintiff for collection merely, that would not vest in the plaintiff any beneficial interest in the note; the transferor could at pleasure recall such a transfer, and so could his administrator;

but the finding of the trial court upon the facts has negatived the conclusion that the transfer was made for such a purpose.

We, therefore, see no ground on which the judgment of the trial court can be disturbed on this appeal, nor can we understand upon what theory or hope of success the appeal has been prosecuted.

The objection that there was no evidence of the loss of the note is met by an admission of the answer that, on a day not stated, in the year 1886, when the defendant gave the memorandum above spoken of to Luis, the note had been lost or mislaid. As Luis died on March 26, 1886, this must have been within three months of his death. It dispensed with more specific proof of loss of the note ; for the state of things existing at a given time is ordinarily presumed to continue. Besides, the case seems to have been tried, on both sides, on the theory that the note was lost, and this fact precludes such an objection being raised in an appellate court for the first time.

The same observation may be made upon the objection that no bond of indemnity was tendered, as required by the statute, in the case of a recovery upon lost negotiable instruments. None was requested, and no such objection was made in the court below, by the motion for new trial, or otherwise. It is, therefore, too late to raise this question for the first time in an appellate court. If the matter had been brought to the attention of the trial court, it is not doubted that a suitable bond of indemnity would have been required before entering the judgment.

We do not wish to be understood as intimating that anything which is here held will cut off the right of Nacke from maintaining a suit in equity to enjoin the payment of this money to the plaintiff, in his individual character of judgment creditor. He, of course, has the right to impeach, in an equitable action, the *bona fides* of this transfer ; and it will be for a court of equity to

say, in a proper proceeding, whether Luis had the right, indebted as he was, to transfer this valuable chose in action to the plaintiff for such services as the plaintiff appears to have rendered.

The judgment will be affirmed, with the concurrence of all the judges.